Filed 9/19/22 P. v. Chadwick CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C094306 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CF03304) |
| v. | |
| JOSHUA CHADWICK, | |
| Defendant and Appellant. | |

At the time of the trial in this case, in early March 2021, federal authorities recommended that everyone wear face coverings while in public indoor settings. It did so to slow the transmission of COVID-19. It did so, moreover, at a time when vaccines against the virus that causes COVID-19 were not yet widely available and when the best scientific evidence demonstrated that face masks were effective at reducing the spread of the virus and the risk of infection in indoor settings.

Defendant Joshua Chadwick was tried and convicted under these circumstances. Consistent with federal recommendations at the time, the trial court required all witnesses

to wear face masks during their testimony. Because of the face masks, the jury's ability to see each witness's face was impaired to a degree. But the jury could still see the witnesses' eyes, hear the tone of their voices, and assess their overall body language. The jury could also, among other things, consider the witnesses' past consistent and inconsistent statements, the witnesses' ability to remember and describe the relevant events, and other evidence tending to support or undermine the witnesses' testimony.

On appeal, defendant raises one claim: The trial court violated his Sixth Amendment right to confront witnesses when it allowed the witnesses to testify wearing face masks. He reasons that the masks were unnecessary and left the jury unable to effectively assess the credibility of the witnesses. We find otherwise. Because we find that the mask requirement was necessary to further an important public policy and that the reliability of the witnesses' testimony was otherwise assured, we conclude that the witnesses' wearing of masks did not violate defendant's constitutional right to confront witnesses. We thus affirm.

## I. BACKGROUND

Defendant was charged with 14 counts of childhood sexual abuse. These included two counts of sexual intercourse with a child under 11 years of age (Pen. Code, § 288.7, subd. (a)), eight counts of committing a non-forcible lewd act on a child under 14 years of age (*id.*, § 288, subd. (a)), and four counts of oral copulation with a child under 11 years of age (*id.*, § 288.7, subd. (b)). The charging document also, for each count of committing a non-forcible lewd act on a child under 14 years of age, alleged that defendant committed this offense against more than one victim (*id.*, §§ 667.61, subds. (e)(4) & (j)(2), 1203.066, subd. (a)(7)). These charges followed after three children, P.H., M.C., and P.C., accused defendant of sexual abuse.

All witnesses at trial, including the three children, testified wearing face masks. Although defendant objected that the use of masks would obscure facial expressions and thus violate his constitutional rights to due process and a fair trial, the trial court

2

overruled the objection. It acknowledged that "facial expressions are certainly important," but it said that it had "to keep people safe." It added that the "defense and the prosecution both have to deal with th[e] difficulty" of being "unable to see the lower half of a witness or prospective juror's face," which was "just a fact of life these days." Consistent with the trial court's orders, everyone in the courtroom wore face masks.

The jury ultimately found defendant guilty of six of the eight counts of committing a non-forcible lewd act on a child under 14 years of age and found true the allegation that defendant committed these acts against more than one victim. It found defendant not guilty on the remaining counts. The trial court afterward sentenced defendant to 150 years to life in prison.

Defendant timely appealed.

## II. DISCUSSION

Defendant's sole claim on appeal is that the trial court violated his Sixth Amendment right to confront witnesses when it allowed witnesses to testify at trial while wearing face masks. Although he acknowledges his trial counsel never raised this precise objection, but instead only objected to the use of face masks as a violation of his rights to due process and a fair trial, he contends his argument has not been forfeited because the trial court's overruling of his objection "demonstrates that asserting the additional objection [based on the right to confront witnesses] would have been futile." He adds that to the extent his trial counsel's failure to raise this specific objection resulted in forfeiture, his counsel provided ineffective assistance. We find no violation of the Sixth Amendment's confrontation clause.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " (*Maryland v. Craig* (1990) 497 U.S. 836, 844 (*Craig*); see also Cal. Const. art. I, § 15 [providing the same].) The Supreme Court has observed that the clause: (1) guarantees the defendant

3

the right to examine witnesses in person; " '([2]) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; ([3]) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; [and] ([4]) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.' " (*Craig, supra*, at pp. 845-846.) "The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." (*Id.* at p. 846.)

The right to confrontation, however, is not absolute. The Supreme Court has found that "in certain narrow circumstances, 'competing interests, if "closely examined," may warrant dispensing with confrontation at trial.' " (*Craig, supra*, 497 U.S. at p. 848.) On that understanding, the court in *Craig* dispensed with one of the core rights guaranteed under the confrontation clause—the defendant's right to examine witnesses in person. In that case, the court considered "whether the Confrontation Clause of the Sixth Amendment categorically prohibits a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television." (*Id.* at p. 840.) The court found it did not. It explained that " 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' " (*id.* at p. 849) not an absolute right, and that this preference may give way "where denial of such confrontation is necessary to further an important public policy and . . . where the reliability of the testimony is otherwise assured" (*id.* at p. 851).

In this case, we consider the impairment of another protection afforded under the confrontation clause—its " 'permit[ting] the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in

4

assessing his credibility.' " (*Craig, supra*, 497 U.S. at p. 846.) Both parties assume that, in evaluating the propriety of the mask requirement here, we must apply the same test applied in *Craig*—that is, we must consider whether the requirement was necessary to further an important public policy and whether the reliability of the witnesses' testimony was otherwise assured.

Consistent with the parties' understanding, we accept that this test applies in the circumstances before us. We acknowledge that the Supreme Court has not yet employed this test when a witness's face is obscured. (See *Morales v. Artuz* (2d Cir. 2002) 281 F.3d 55, 58 [noting that the Supreme Court's test described in *Craig* has so far only been applied "where the witness is physically separated from the defendant"; the court has not yet considered whether the same test applies when a witness is present at trial but "with a slight disguise that prevents the defendant and the jurors from seeing the witness's eyes"].) But seeing no reason to follow a different approach, and considering the other courts that have already applied the test described in *Craig* under identical circumstances, we accept that this test is applicable under the circumstances here. (See *People v. Lopez* (2022) 75 Cal.App.5th 227, 232-233 (*Lopez*) [applying standard described in *Craig* when witnesses wore face masks]; *People v. Alvarez* (2022) 75 Cal.App.5th 28, 36 (*Alvarez*) [same]; see also *United States v. de Jesus-Casteneda* (9th Cir. 2013) 705 F.3d 1117, 1120 [applying standard described in *Craig* when witness wore a disguise of a wig and mustache].)

Applying this test here, we find no violation of the Sixth Amendment's confrontation clause. We consider first whether the mask requirement was necessary to further an important public policy. Consistent with other California courts that have considered this question, we find it was. As the Supreme Court has observed, "COVID-19 is a highly contagious, dangerous, and . . . deadly disease." (*Biden v. Missouri* (2022) __ U.S. __ [142 S.Ct. 647, 652].) Attempting to prevent the spread of this deadly disease, the federal government, the states (including California), and many local

5

governments have taken various measures. One prominent measure has involved the use of face masks. Around the time of trial, for example, the Centers for Disease Control and Prevention (CDC) "recommend[ed] wearing a mask . . . to reduce the likelihood of contracting COVID-19." (*Bay City Realty, LLC v. Mattress Firm, Inc.* (E.D. Mich., Apr. 7, 2021, No. 20-CV-11498) 2021 U.S. Dist. Lexis 67054, \*3 [discussing CDC guidance as of February 22, 2021].) Governments, in taking these measures, acted consistent with "the best scientific evidence demonstrat[ing] [that] the wearing of face masks was effective at reducing the spread of the virus and the risk of infection in indoor settings." (*Lopez, supra*, 75 Cal.App.5th at p. 233.)

The trial here took place under these circumstances—a time when COVID-19, a once-in-a-century global pandemic, continued to spread through the community and when the federal government continued to recommend masks in indoor public settings to stem the spread of the disease. This was a time too when COVID-19 vaccines were not yet widely available. Although federal authorities had already issued emergency use authorizations for several vaccines at this time, only certain "priority groups" were eligible to receive the vaccines at this point; the broader public was not eligible until some time after. (See *Stepien v. Murphy* (D.N.J. 2021) 574 F.Supp. 3d 229, 234 [noting that "vaccines became widely available in the Spring of 2021"].)

On the facts of this case, we are satisfied that the mask requirement here was necessary to further an important public policy—namely, the policy of " 'ensuring the safety of everyone in the courtroom in the midst of a unique global pandemic.' " (*Lopez, supra*, 75 Cal.App.5th at pp. 232-234 [mask requirement during COVID-19 did not violate the Sixth Amendment]; see *Alvarez, supra*, 75 Cal.App.5th at p. 34 [same]; *People v. Edwards* (2022) 76 Cal.App.5th 523, 525 (*Edwards*) [same]; see also *Roman Catholic Diocese of Brooklyn v. Cuomo* (2020) __ U.S. __ [141 S.Ct. 63, 67] (*per curiam*) ["Stemming the spread of COVID-19 is unquestionably a compelling interest"]; see also *Ala. Ass'n of Realtors v. Department of Health & Humans Services* (2021)

6

__ U.S. __ [141 S.Ct. 2485, 2490] (*per curiam*) ["It is indisputable that the public has a strong interest in combating the spread of the COVID-19 Delta variant"].)

Attempting to counter this evidence, defendant claims "[l]ess intrusive means could have been used that would have protected [his] right to confrontation"—specifically, through "the adequate spacing of individuals in the courtroom or by the use of protective glass barriers through which facial expressions would not have been hidden from view." But nothing in the record demonstrates that defendant asked the trial court to consider these or any other alternatives. And even setting that aside, we still find defendant's argument meritless. First, to the matter of spacing, defendant's argument is pure speculation. "Nothing in the record indicates the particulars of the courtroom here allowed for such accommodation." (*Lopez, supra*, 75 Cal.App.5th at p. 235.) Nor does defendant supply any evidence indicating that the spacing he has in mind would have, as he claims, "protect[ed] all people in the courtroom from COVID-19" or served as an adequate substitute. Second, in terms of protective glass barriers, defendant similarly fails to supply any evidence indicating a glass barrier would have served as an adequate substitute for a mask. To the extent, moreover, that defendant envisions transparent barriers comparable to transparent face shields, his offered alternative finds no favor with the agency experts. As several courts have noted, " '[t]he CDC finds that face shields are not as effective as masks, and it does not recommend substituting face shields for masks.' " (*Alvarez, supra*, 75 Cal.App.5th at p. 37 [quoting a federal district court].)

We consider next whether the reliability of the witnesses' testimony was otherwise assured. Once again, consistent with other California courts that have considered this question, we find it was. We acknowledge that "[a] mask covering the nose and mouth undeniably impairs jurors' ability to see a witness's face to a degree." (*Edwards, supra*, 76 Cal.App.5th at p. 526.) But we find other considerations assure the reliability of the witnesses' testimony. The witnesses in this case testified in person, they testified under oath, they were subject to cross-examination, and, although their noses and mouths were

7

hidden, numerous other considerations allowed the jury to assess the witnesses' credibility.

The jury, for instance, could observe the witnesses' "eyes, tops of the cheeks, . . . the body, . . . posture, tone of voice, cadence and numerous other aspects of demeanor. . . . 'They [were] able to see how the witnesses move[d] when they answer[ed] a question; how the witnesses hesitate[d]; how fast the witnesses sp[oke]. They [were] able to see the witnesses blink or roll their eyes, make furtive glances, and tilt their heads.' " (*Alvarez, supra*, 75 Cal.App.5th at p. 38.) And they were able to consider many other factors too, including: "(1) how well the witness could see, hear, or otherwise perceive the things about which the witness testified, (2) how well the witness was able to remember and describe what happened, (3) whether the witness answered questions directly, (4) whether the witness's testimony may have been influenced by bias or prejudice in the form of a personal relationship with someone involved in the case, or a personal interest in how the case was decided, (5) any past consistent or inconsistent statements by the witness, (6) the existence of other evidence that proved or disproved any fact about which the witness testified, and (7) whether the witness admitted to being untruthful about any aspect of his or her testimony." (*Lopez, supra*, 75 Cal.App.5th at p. 235.) Considering all these tools available to the jury to assess witness credibility, together with the witnesses' presence in court, their testifying under oath, and their submitting to cross-examination, we are satisfied that the reliability of the witnesses' testimony was otherwise assured.

Although defendant contends otherwise, we find his arguments unpersuasive. He principally argues: "There was no such assurance in this case because the trial testimony of M.C. and P.C. (and their . . . interviews [with the child abuse response team]) was, in part, conflicting and inconclusive." But defendant's argument only highlights one of the means that the jury had to assess credibility—it could consider the witnesses' inconsistent and inconclusive statements. Nothing about the mask requirement undermined the jury's

8

ability to do so. Defendant adds that "the reliability of the trial testimony of M.C. and P.C. was materially impaired because they testified with a mask obscuring their facial expressions from the view of appellant, trial defense counsel, and the jury." But for the reasons already covered, although we acknowledge that a witness's wearing of a mask impairs a jury's ability to see a witness's face to a degree, we find the remaining tools available to the jury here to assess the witnesses' credibility demonstrate that the reliability of their testimony was otherwise assured.

In sum, because we find that the mask requirement was necessary to further an important public policy and that the reliability of the witnesses' testimony was otherwise assured, we conclude that the witnesses wearing of masks did not violate defendant's rights under the Sixth Amendment's confrontation clause. (See *Lopez, supra*, 75 Cal.App.5th at p. 235; *Alvarez, supra*, 75 Cal.App.5th at p. 38; *Edwards, supra*, 76 Cal.App.5th at p. 525.) We emphasize, however, that our holding is a narrow one based on the particular facts of this case. As the *Alvarez* court observed: "There may well be occasions, due to the fluid nature of the pandemic and evolving health and safety measures, as well as the type of face covering that may be at issue, when the balance tips differently, and does not fit as neatly, within the public policy exception identified in *Craig.* That is not the case on the record before us." (*Alvarez, supra*, at p. 39.)

## III.  DISPOSITION

The judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
DUARTE, Acting P. J.

/S/

_____
HOCH, J.